The next case this morning is 525-0289, People v. Bailey. Arguing for the appellant is James Denning, James David Denning. Arguing for the appellee is 711 student Shmuel Wyckoff and supervising attorney Thomas Arado. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Okay, good morning gentlemen. Mr. Wyckoff, welcome back again. You've taken on a big load today. Mr. Denning, are you ready to proceed? Yes, your honor, I am. You may do so when you're ready. Good morning, your honors, opposing counsel. May it please the court, my name is David Denning with the Office of the State, a fellow defender, and today I'm here to represent Mr. Jaylen Bailey in his appeal from two battery convictions. Your honors, we request that this court overturn the battery convictions for two reasons, two related reasons. First, because the state failed to prove beyond a reasonable doubt that there was any physical contact between Mr. Bailey and Austin, and second, because the state failed to prove that he did any contact knowingly. At trial, state relied heavily, almost exclusively, on Michelle Austin's testimony and there were so many inconsistencies in her own testimony and then differences between her testimony and the other evidence that no rational trial or fact could have found her credible. Counsel, as you pointed out, this was totally a credibility determination and aren't we required to resolve those credibility issues in favor of the state? In general, trial courts do deserve some deference there, your honor, but if it's against the manifest weight of the evidence or yes, if it's against the manifest weight of the evidence, this court can overrule or move past that deference. I guess what I'm asking you is, aren't you asking us to reweigh the evidence and actually try the case, and which we can't do? No, your honor, because here it's more about, well, whether given that evidence, any rational trial or fact could have found that witness credible and this court doesn't have to reweigh all of the evidence. It's just simply that trial court depended or because the state depended at trial exclusively on her testimony. That's really the only thing that needs to be weighed here and even making reasonable inferences, your honor, no rational trial or fact could have found that she was credible and the state basically had to rely on unreasonable inferences. For instance, Austin had a personal cell phone recording that clearly showed Mr. Bailey moving away from both her and Williams, the other state witness, the other hotel staff. He moves away, he comes back, he gets close to them as they both testified, but that video does not show that he makes any kind of contact with Austin. It doesn't move as if he bumped her. She doesn't move away from him. She doesn't say, get back, don't push me, any of the things we would normally expect. It's also important that the hotel camera video was not introduced at trial and both Williams and Austin testified that at least parts of their altercation would be recorded by that hotel camera, even if maybe not the stuff outside. So, well, I bring up the Austin's video for one main reason, and that's throughout that video, we actually see Mr. Bailey exercising restraint. When he moves away and comes back close to Williams and Austin, he gets physically close to him, but he doesn't make contact. When he threw the food, you can see that he clearly throws it on the ground, but not toward Williams or Austin. When he kicks it, he kicks it kind of in front of Williams, but not toward her. And so the trial court had to make the unreasonable inference that in the very few moments in which Mr. Bailey is not clearly visible in the video, he acted contrary to every other moment when we see him. So, and that speaks to both the evidence that he didn't make a physical contact and that if he did, it was knowingly because every time we do see him, he clearly is not contacting Williams or Austin. Yeah. May I ask you a clarification, please? It sounds like we are getting awful close to what Justice McKinney brings up, asking us to retry the case and reevaluate the evidence when the standard isn't for us to reevaluate. It's given in the light most favorable and reasonable inferences they've found. So you're citing issues that you think demonstrate an unreasonable inference by the trial court. Is that what you're doing? Yes, Your Honor. Secondly, to commit a battery, it does not require forceful contact, does it? No, Your Honor, just knowing to cause a contact. I'm sorry, I missed a word there. Just knowing that he had to cause the contact. It doesn't have to be forceful, Your Honor. All right. Go ahead, please. Mr. Denning, let me ask a follow-up question. Mr. Denning, the video in this case taken by the victim, your client was quite out of control, it appeared, with the throwing of the food and the kicking of the food and what he was saying to the individual. But is there any evidence in the video of her getting behind this wall or him chest bumping her at all? No, Your Honor. She does move at the very end of the video. It could be that she moves toward the wall, that she moved to create a little separation. But even in the statement, it's brief, offered a couple of moments in which a person could maybe believe that he bumped into her. But it's not clear, it's not clear from trial, when that chest bump occurred. And although you can tell from the video that she moves away, it's unclear whether that's toward the wall or... Well, I didn't see a wall. That's why I was wondering. She testified to a wall. Did I miss something? Is that what I'm asking? I'm not sure, Your Honor. I think it's possible that just because the video is so narrowly focused that the wall just doesn't come into it. So, I don't know. It's not clear from the video where she goes to or where the wall is. And going back to your earlier point there, Your Honor, Mr. Bailey, in some ways, does seem out of control, but not quite. He's being very dramatic. He's shouting at them. Both Williams and Austin testified that he was close enough to them that his spit was as he was shouting. And they both agreed that that was unintentional. But it does say, okay, he was upset. He was acting out. But even given that, he's careful throughout that encounter to avoid physical contact. And again, I point to throwing the food. When he winds up and kicks it, you can see that however upset he is, however dramatic he wants to be, he still shows consistent restraints as far as actually causing physical contact with them. And I would just also to emphasize a little on Austin's problems with their testimony, you know, the details of her account differs substantially from Williams's account, the other state witness, the other hotel staff. And if you go through the timeline and look at all the things that they describe, Williams and Mr. Bailey's accounts actually sync up. And the outlier is consistently Austin. And Austin is the only one who said that Bailey made any physical contact with her. And that includes, well, Williams said Mr. Bailey did not contact Williams at all. And she wasn't even asked if Williams saw Mr. Bailey contact Austin. So the whole case hinges on Austin's testimony. And she differed from the other evidence throughout the whole account. And for that reason, your honors, we ask that you overturn Mr. Bailey's convictions. Thank you. All right, Mr. Jenning, Judge Hackett, do you have any other questions? No, thank you. Justice McKinney? No, thank you. Okay. Mr. Jenning, you'll have a few moments for rebuttal after Mr. Wyckoff makes his argument. Mr. Wyckoff, you may proceed when you're ready, sir. Thank you, your honors. Good morning. Good morning, your honors. Counsel, may it please the court. My name is Shmuel Wyckoff, and I'm a 711 licensed law student appearing under the supervision of attorney Thomas Arado for the state. This court should affirm defendant's conviction and sentence because a reasonable fact finder could find that defendant made contact of an insulting or provoking nature with Michelle Austin in a public place. Just to clarify at the outset, there was only one conviction here. He was charged with two counts of aggravated battery. The trial court acquitted him on the count related to his spitting at the hotel workers and found him guilty for chest bumping into Michelle Austin. It's also undisputed that this occurred in a public place and that the conduct was insulting or provoking. The only elements in dispute are whether the contact actually happened and whether it was done knowingly as opposed to unintentionally. And a reasonable fact finder could certainly find both of those elements to be true. It is well-settled law that one witness can sustain a conviction, that this court defers to the trial court's credibility determinations, and that some inconsistency witness testimony is not a reason to overturn a conviction. Here Michelle Austin testified that defendant chest bumped her six times. One of those times happened while she was recording from her cell phone, five other times not captured on her phone video. That testimony alone is enough to sustain a conviction. And Austin's testimony against defendant's testimony, as Justice McHaney pointed out, is just a classic credibility determination that fact finders engage in every day. In this case, even though we have to defer, we're not a rubber stamp, correct? You are not a rubber stamp, your honor, but the trial court's credibility determinations are entitled to great deference and are entitled to deference up until it becomes so unreasonable that no reasonable fact finder could agree with that credibility determination. And there is not such flaws in that credibility determination in this case. And this case really is a good example of why appellate courts generally do not disturb credibility determinations. Austin, in her testimony, demonstrated to the trial court how defendant chest bumped her. None of us here saw that demonstration, so we have no way of evaluating its plausibility. A defendant on reply and today argues that Austin was not credible because the cameras don't show her move when she claims defendant chest bumped her. But we don't know how big Austin is. True, we can see defendant on the video. We can't see Austin. But the trial court was able to see both Austin and defendant in the same room. What difference does that make to you? As to whether he touched her or not? Well, defendant in their briefing and today, I believe, argue that Austin's testimony was so incredible because the camera doesn't show her move in any significant way at the point that she claims that the defendant contacted her. Now, that may be the case if Austin is a tiny person and defendant is much larger. We don't know how big Austin is. We don't know if such a contact would cause her to move while the trial court was able to view both Austin and defendant in the same room and make that determination, something that this court is not able to do based on the cold record. Further, on the surveillance video, there was testimony that the surveillance cameras do not capture the area where the incident took place. And even if they did, the police department's failure to collect that evidence is no reason to overturn a conviction unless that failure is of such conclusive character as to cast serious doubt on the entirety of the state's case. But that is not so here. We don't know why the officers failed to collect surveillance video. There could be any number of reasons. Perhaps they had more urgent calls. Perhaps they didn't notice the cameras or maybe they just forgot. But that's still not a reason to toss a conviction. If there was no contact, there's no battery, correct? Correct. But if there's no contact, then all we've got really is disorderly conduct, which the state purposely did not charge, right? Of course, Your Honor. Okay. But here Michelle Austin unequivocally testified that defendant, in fact, did contact her six times. We're discussing this cell phone video a lot today. But again, only one of the contacts happened on that cell phone video. Michelle Austin testified that... Let me ask you a question. The other hotel employee was standing in front of the doors to the hotel, presumably so he would not reenter. She was never asked whether she saw these chest bumps, first of all. And second of all, why would a woman stand in front of this defendant, who was literally out of control, and submit herself to being chest bumped six times? That seems a bit incredible to me. So the first one is the witness was never asked what she saw. Okay. So taking the two questions in turn, just because Williams didn't testify to whether defendant contacted Austin, I don't think that renders Austin's unequivocal testimony that defendant did contact her by chest bumping her completely untrustworthy. The trial court was and still found Austin to be credible. And then as to why a woman would subject herself to that, again, your honors cannot see Michelle Austin in the video. It's facing towards defendant. We don't know how big Austin is. We don't know Austin's background. We didn't hear her testify. We only have a cold record. The idea that she would just stand there while the defendant contacts her makes her completely incredible. I don't think is the case. I think these hotel workers are making sure that this person does not reenter the hotel. And they're protecting their guests. I think there was testimony, if my memory serves me correct, that they were concerned about him getting to hotel guests. And then further, the state would point the court to the Phillips case on page 13 of our brief, which indicated that expressions of anger by defendant can be used to that he, in fact, contacted the victim purposely, which is apparent here. Defendant's entire course of conduct here was insulting and provoking. And his chest bumps only furthered that conduct and was the type of conduct that would provoke a fight, which by his statements about fighting and shooting, defendant was apparently trying to accomplish. And then finally, I would just say that Austin's and William's testimony, I don't think were as inconsistent as defendant makes them out to be. There were certainly a few collateral details, such as when defendant first entered the hotel, his movements before he entered the hotel, where Williams and Austin testified differently, but people remember things differently. And there's a few places in the record, I think on cross-examination specifically, where it seems that Austin is a bit confused by the questioning. But Williams and Austin's testimony about the confrontation itself largely tracked each other. And this court should not disturb factual findings and credibility determinations because of a few inconsistencies. So seeing that my time is almost up, unless the court has any other questions, the state respectfully asks the court to affirm defendant's conviction and sentence. Justice McKinney, questions? No, no, thank you. Justice Hackett? No, thank you. Okay. Thank you, Mr. Wyckoff. Mr. Denning, response? Yes, Your Honor. First, I'd like to thank opposing counsel for the clarification. That is correct. It was one conviction on battery, and I apologize for misspeaking. Just to highlight some of the differences between Austin's testimony and the other evidence, she apparently told Officer Polkabreck that she was the manager at the hotel, but then she obviously testified that she was a floater, did different positions. Her timeline was not just different from Williams's. It was also impossible. But the way she described it on the stand, it was that she had seen Mr. Bailey on camera, and then when she gets the times, it would have required her to have seen him on the camera before she even actually got to work. And then every detail from then on out is different. She disagrees about where they first saw Mr. Bailey, where they encountered him, which entrance and exit he took, whether she followed Mr. Bailey out of the hotel. Williams testified that Austin followed him out specifically to see if she could find him outside of the hotel for whatever reason, and that Williams watched the two of them argue on the hotel security camera for several minutes before Williams then stood and blocked the doorway. So there are significant differences and not just superficial differences between Austin's testimony and the other evidence. Also, she does testify that Mr. Bailey bumped her six times throughout the encounter, and it's not clear whether all of that was outside or inside or when it all happened. But the fact that none of those bumps are corroborated by other evidence, you know, Williams didn't verify that, she didn't corroborate that, and the hotel cameras obviously didn't because they weren't introduced. Well, yeah, barring other questions, your honors, I don't conclude my rebuttal. Thank you. Okay, Justice McKinney? No questions. Justice Hackett? No, thank you. All right, gentlemen, thank you for your arguments here today. We will take this matter under advisement. It's an interesting case, and we'll issue an order in due course. Appreciate your efforts.